SCOTT v ALLEN BRADLEY COMPANY

Docket No. 70520. Submitted April 17, 1984, at Detroit.—Decided
    October 4, 1984. Leave to appeal applied for.

    Allan Scott was injured during the course of his employment
    when his hands were caught in a die press on which he was
    working. He brought an action in the Macomb Circuit Court
    against the Allen Bradley Company, alleging that negligent
    failure to install a safety device on a switch which controlled
    the manual and automatic mode of the die press was a proxi-
    mate cause of his injuries. Aetna Insurance Company, the
    employer's workers' compensation carrier, intervened as a
    party plaintiff. Approximately 30 minutes before the accident,
    Scott accidently bumped the switch to the automatic position
    while loading stock into the press. Scott informed his supervi-
    sor, who told Scott that the same problem had occurred two
    weeks earlier. The supervisor told Scott to either tape the
    switch down or move his stock away from the control box. Scott
    returned to his work. The stock hit the switch again, thereby
    activating the press's automatic mode. Unaware of this, Scott
    placed his hands into the press to remove some stock. His
    entire right hand and most of his left hand were severed in the
    accident. The trial court, Lawrence P. Zatkoff, J., sitting as the
    trier of fact, set damages at $975,000, reduced by 20% based on

REFERENCES FOR POINTS IN HEADNOTES
[1] 4 Am Jur 2d, Appeal and Error § 76.
    5 Am Jur 2d, Appeal and Error § 839.
[2, 3] 63 Am Jur 2d, Products Liability §§ 367 et seq., 752.
    Products liability: industrial presses. 8 ALR4th 70.
    Products liability: manufacturer's or seller's obligation to supply or
        recommend available safety accessories in connection with indus-
        trial machinery or equipment. 99 ALR3d 268.
    Products liability: duty of manufacturer to equip product with
        safety device to protect against patent or obvious danger. 95
        ALR3d 1066.
[4] 57 Am Jur 2d, Negligence § 199 et seq.
    Foreseeability as an element of negligence and proximate cause. 100
        ALR2d 942.
[5] 45 Am Jur 2d, Interest and Usury §§ 78, 96, 97.

Scott's comparative negligence, for a total award of $780,000, plus costs and interest. Defendant appealed. *Held:*

1. Findings of fact, including awards of damages, made by a trial court sitting as the trier of fact should not be set aside on appeal unless clearly erroneous, that is, unless the reviewing court is left with a definite and firm conviction that a mistake has been made.

2. A manufacturer when designing a product is under a duty to use reasonable care to guard against unreasonable or foreseeable risks and, where an injury is reasonably foreseeable, it is for the trier of fact to determine whether as a practical matter a safety device should have been put on the product by the manufacturer.

3. The test in determining whether a product is unreasonably dangerous is not whether the risks are obvious, but whether the risks are unreasonable in the light of foreseeable risk of injury.

4. An intervening cause will not sever whatever connection there may be between a plaintiff's injuries and a defendant's negligence if that intervening cause was reasonably foreseeable. The foreseeability of an intervening cause or the reasonableness of the defendant's conduct with respect to the intervening cause are questions for the trier of fact.

5. The trial court's findings of fact, including the amount of damages and percentage of contributory negligence, have an evidentiary basis in the record and are not clearly erroneous, as is the court's conclusion that no intervening action severed the connection between defendant's negligence and Scott's injury.

6. Judgment interest is to be compounded annually at a rate of 12% after June 1, 1980. Where a judgment is rendered in a cause of action filed prior to that date, the rate of interest is to be 6% computed as simple interest from the date of filing of the complaint until June 1, 1980, and thereafter the rate of 12% compounded annually applies to the amount of judgment combined with interest which has accrued to June 1, 1980, at the 6% simple interest rate. The court's judgment concerning interest was proper.

Affirmed.

1. APPEAL — FINDINGS OF FACT — DAMAGES — COURT RULES.

Findings of fact, including awards of damages, made by a trial court sitting as the trier of fact should not be set aside on appeal unless clearly erroneous, that is, unless the reviewing court is left with a definite and firm conviction that a mistake has been made (GCR 1963, 517.1).

2. PRODUCTS LIABILITY — FORESEEABLE INJURY — SAFETY DEVICES.

A manufacturer when designing a product is under a duty to use reasonable care to guard against unreasonable or foreseeable risks; where an injury is reasonably foreseeable, it is for the trier of fact to determine whether as a practical matter a safety device should have been put on the product by the manufacturer.

3. PRODUCTS LIABILITY — NEGLIGENCE — STANDARD OF CARE.

The test in determining whether a product is unreasonably dangerous is not whether the risks are obvious, but whether the risks are unreasonable in the light of foreseeable risk of injury.

4. NEGLIGENCE — INTERVENING CAUSE.

An intervening cause will not sever whatever connection there may be between a plaintiff's injuries and a defendant's negligence if that intervening event was reasonably foreseeable; the foreseeability of an intervening cause or the reasonableness of the defendant's conduct with respect to the intervening cause are questions for the trier of fact.

5. INTEREST — JUDGMENT INTEREST — SIMPLE INTEREST — COMPOUND INTEREST.

Judgment interest is to be compounded annually at a rate of 12% after June 1, 1980; where a judgment is rendered in a cause of action filed prior to that date, the rate of interest is to be 6% computed as simple interest from the date of filing of the complaint until June 1, 1980; thereafter the rate of 12% compounded annually applies to the amount of judgment combined with interest which has accrued to June 1, 1980, at the 6% simple interest rate (MCL 600.6013[2]; MSA 27A.6013[2]).

*Goldsmith, Yaker & Goldsmith* (by *Daniel S. Goldsmith*), and *Reginald S. Johnson,* for plaintiff.

*Harvey, Kruse, Westen & Milan, P.C.* (by *Dennis M. Goebel* and *Paul S. Koczkur*), for defendant.

Before: SHEPHERD, P.J., and BEASLEY and W. J. CAPRATHE,* JJ.

PER CURIAM. Defendant, Allen Bradley Com-

* Circuit judge, sitting on the Court of Appeals by assignment.

pany, appeals as of right from a judgment in the amount of $1,195,171, including interest, following a five-week bench trial. Plaintiff Allan Scott sued for personal injuries under theories . of products liability and negligent design of a punch press switch. Plaintiff Aetna Insurance Company is the workers' compensation carrier for Scott's employer, G & L Industries, and intervened on Scott's behalf.

On July 30, 1975, Scott was operating a Sheridan die press for G & L. His job involved placing pieces of cardboard stock into the press's opening and depressing two palm buttons which activated the press and cut the stock into desired shapes. The press's two operating modes were controlled by a switch allegedly manufactured by Allen Bradley. With the switch at the "H" or "hand" position, the press only cycled once. In the "A" or "automatic" position, the press cycled continuously. The switch was enclosed in a control box located to the immediate left of the die opening.

Approximately 30 minutes before the accident, Scott accidently bumped the switch to the automatic position while loading stock into the press. Scott informed his supervisor, who told Scott that the same problem had occurred two weeks earlier. The supervisor told Scott to either tape the switch down or move his stock away from the control box.

Scott returned to his work. The stock hit the switch again, thereby activating the press's automatic mode. Unaware of this, Scott placed his hands into the press to remove some stock. His entire right hand and most of his left hand were severed in the accident.

The trial court set damages at $975,000, reduced by 20% based on Scott's comparative negligence, for a total award of $780,000, plus costs and interest. Although the trial court was confronted with

conflicting evidence regarding the factual issues in this case, we are not left with a definite and firm conviction that the court's findings were clearly erroneous. GCR 1963, 517.1; *Precopio v City of Detroit,* 415 Mich 457, 465-466; 330 NW2d 802 (1982).

Allen Bradley first argues that the trial court erred in finding that the switch was modified while it was in Allen Bradley's exclusive control. After reviewing the record, we cannot say that the trial court's finding was clearly erroneous. Furthermore, the trial court's opinion expressly states that this finding was not the determining factor in deciding the case. Therefore, even if erroneous, this finding was not prejudicial to the defendant.

Next, defendant argues that the trial court erred in finding that Allen Bradley manufactured the switches. We disagree. Scott's expert testified that the switch was made by Allen Bradley. After the accident, an electrician removed the switch and placed it on a wall control box. It remained there until Allen Bradley representatives removed it for photographs in 1978. These photographs clearly showed the initials "AB" appearing on the switch contact blocks. The operator portion of the switch had no specific markings which would conclusively link it to any manufacturer. However, an Allen Bradley sales catalog depicts an operator switch with a similar raised black arrow. Under these circumstances, we reject the defendant's argument that the trial court's finding was based on mere speculation. See *Parsonson v Construction Equipment Co,* 386 Mich 61, 77; 191 NW2d 465 (1971). The record contains sufficient evidence to conclude that the switch was manufactured by Allen Bradley, and therefore the court's finding was not clearly erroneous.

Allen Bradley next argues that the trial court

erred in imposing liability based on Allen Bradley's failure to guard the switch. In reality, the trial judge imposed liability on alternative theories. His opinion was based on the defendant's duty to issue warnings with respect to appropriate usage *or* Allen Bradley's failure to supply an appropriate safety device (switch guard).

A product may be rendered unreasonably dangerous by the omission of a safety device. Furthermore, where an injury is reasonably foreseeable, the trier of fact must determine whether a safety device should have been put on the product by the manufacturer. See *Coger v Mackinaw Products Co,* 48 Mich App 113, 122; 210 NW2d 124 (1973). In the case at bar, the trial judge found that the risk of injury to Scott was unreasonable and reasonably foreseeable by Allen Bradley. The court also found that Allen Bradley had a duty to guard the switch, and that the failure to guard the switch was a proximate cause of Scott's injuries.

Allen Bradley cites *Jordan v Whiting Corp (On Rehearing),* 49 Mich App 481; 212 NW2d 324 (1973), *rev'd in part on other grounds* 396 Mich 145; 240 NW2d 468 (1976), in support of its argument that it met its burden of furnishing a product safe for its reasonably foreseeable uses. The record in *Jordan,* however, did not show that the manufacturer knew how the component would ultimately be integrated. See 49 Mich App 486. Here, in contrast, the trial court ruled as a matter of fact that Allen Bradley knew or should have known that the switch would be used as a power press mode selector. We believe that sufficient evidence was introduced to raise a question as to the foreseeability of the particular injury and the reasonableness of Allen Bradley's conduct in relation to it. Allen Bradley argues that there was no showing that a defect existed at the time the

switch left the manufacturer in 1955. However, the defect involved at the time was the absence of any safety device or guard. This defect had nothing to do with the internal operation of the switch or the fact that it might wear out. In short, we agree with the trial court's imposition of liability based upon the finding that Allen Bradley did not produce a product which was safe for its foreseeable uses. The fact that liability was properly imposed on this basis makes it unnecessary to address the trial court's alternative basis of liability.

Allen Bradley next contends that Scott failed to present sufficient evidence to establish defective design according to *Owens v Allis-Chalmers Corp,* 414 Mich 413; 326 NW2d 372 (1982). *Owens* established that the plaintiff must present evidence concerning the magnitude of the risks involved and the reasonableness of any proposed alternative design. *Owens, supra,* p 432. Allen Bradley's expert testified that the company began producing switch guards sometime after 1955. Two guards were introduced at trial which cost approximately $1 each to produce. It was obvious that the proposed guards would not affect the worker's ability to perform his job. Allen Bradley's expert stated that the guards were developed to avoid accidental activation. Therefore, it is apparent that Allen Bradley was aware of the magnitude of the risks involved. Under the circumstances, we find that Scott introduced sufficient evidence to satisfy *Owens.*

Allen Bradley also argues that the actions of Scott and G & L were intervening, superseding causes. The defendant points to G & L's removal of a point-of-operation guard, and to Scott's admitted knowledge that the switch could accidentally slip into the automatic mode.

Generally, an intervening act will not sever the connection between a defendant's negligence and a plaintiff's injury if such intervening act was reasonably foreseeable. If there might be a reasonable difference of opinion as to the foreseeability of a particular risk, the reasonableness of a defendant's conduct with respect to it, or the character of the intervening cause, the issue should be resolved by the trier of fact. See *Maletich v Zemaiduk,* 115 Mich App 206, 210; 320 NW2d 72 (1982), and cases cited therein. The trial court determined as a matter of fact that Scott's actions were reasonably foreseeable. The court also found that Allen Bradley's omissions were a proximate cause of the injuries. These findings were not clearly erroneous. Allen Bradley knew or should have known that its switches would be used as mode selectors and that the switches would be placed near points of operation. The trial court did not err in concluding that Scott's intervening act was reasonably foreseeable.

On a related issue, we are not convinced that the damage award was "grossly excessive". The clearly erroneous standard of review applies to a damage award rendered in a bench trial. *Precopio, supra,* p 467. However, a bench award is subject to a finer "judicial sieve" than a jury award. *Id.; Schneider v Pomerville,* 348 Mich 49, 54; 81 NW2d 405 (1957). Even using this "finer mesh" on review, the ultimate award was not out of line with similar injuries. See *Burnett v Mackworth G Rees, Inc,* 109 Mich App 547; 311 NW2d 417 (1981), where this Court upheld a jury award of $1.5 million for the loss of four fingers in a die press accident. See also Anno: *Excessiveness or adequacy of damages awarded for injuries to arms and hands,* 12 ALR4th 96, pp 191-192.

Rather than focusing on the amount of damages, Allen Bradley attacks the percentage of compara-

tive negligence attributed to Scott. The record indicates that Scott was aware of the danger of accidental activation of the switch, and that Scott decided to move his stock rather than tape the switch. However, there is no magical formula for apportioning negligence. In this case, we do not find that the trial court's finding was clearly erroneous.

The remaining issue involves the calculation of interest on the judgment. The trial court calculated interest at 6% from the date of filing the complaint to June 1, 1980, and 12% compounded annually thereafter on the damage amount *plus* the accrued interest up to June 1, 1980. Allen Bradley now argues that the 12% should be compounded only on the original judgment amount rather than on the balance owing as of June 1, 1980.

MCL 600.6013(2); MSA 27A.6013(2) reads:

"For complaints filed before June 1, 1980, in an action involving other than a written instrument having a rate of interest exceeding 6% per year, the interest on the judgment shall be calculated from the date of filing the complaint to June 1, 1980 at the rate of 6% per year and on and after June 1, 1980 to the date of satisfaction of the judgment at the rate of 12% per year compounded annually."

This Court interpreted this statute in *Gage v Ford Motor Co,* 133 Mich App 366, 374; 350 NW2d 257 (1984), as follows:

"The statutory language reasonably lends itself to the conclusion that the 12% interest rate applies to the amount of the judgment, plus interest accrued as of June 1, 1980, in that the annual compounding begins 'on and after June 1, 1980'. Since compound interest actually represents interest upon interest, the new

interest rate should apply to any interest that has accrued as of the date that the compounding begins.

"Based on the foregoing, this Court concludes that the 12% interest rate commencing June 1, 1980, applies to the amount of judgment combined with interest which has accrued to that date at the 6% simple interest rate."

We agree with the *Gage* interpretation and affirm the trial court's interest calculation on that basis.

Affirmed.